UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

DIGIMEDIA TECH, LLC,

                         Plaintiff,              21-cv-1831 (JGK)

          - against -                            MEMORANDUM OPINION
                                                     AND ORDER
VIACOMCBS INC., ET AL.,

                         Defendants.

————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiff, DigiMedia Tech, LLC, brought this patent

infringement suit against the defendants, ViacomCBS Inc.,

Showtime Networks Inc., CBS Interactive Inc., and Viacom

International Inc., alleging that the defendants' products

infringe six patents owned by the plaintiff. The defendants have

moved to dismiss counts III, IV, V, and VI of the First Amended

Complaint ("FAC"). For the reasons explained below, the motion

to dismiss is **granted**.

                              I.

    Counts III—VI of the FAC allege infringement of U.S. Patent

Nos. 7,743,399, 8,087,049, 9,055,328, and 8,160,980, which are

owned by the plaintiff.

    Counts III, IV, and V assert the following claims,

respectively: claims 1-3, 11, and 15 of the '399 patent; claims

1, 3-4, 10-11, 13, and 16 of the '049 patent; and claims 1-3, 6-

7, and 11 of the '328 patent. These three patents (together, the

"Preview Patents") relate to providing previews of video or
audio programming over a network. See '399 patent, abstract;
id., col. 1, lines 7-16.[1] The specification of the Preview
Patents describes "generally available" recording apparatuses
that "permit[] a recipient of television and radio programming
to record real-time programming . . . and replay it at a later
time." Id., col. 1, lines 20-23. The specification also
describes the existence of "more sophisticated systems (Digital
Video Recorders) which automatically record programming (via a
digital cache/memory) and allow the user to selectively view
portions of the recorded programming at a later time." Id., col.
1, lines 28-31. The specification states that these prior art
systems are "limited," however, by "failing to fully utilize
network system capabilities. Summaries, for example, may be
poorly defined or delimited resulting in loss of program
material available to the user/viewer." Id., col. 1, lines 41-
44. The Preview Patents seek to improve upon prior art systems
by enabling users "to receive television/audio programming from
a distribution network and view selected summaries of such
programming as part of a network-based service." Id., col. 1,
lines 52-56.

---

[1] Each of the three Preview Patents is entitled "Network-Based Service To
Provide On-Demand Video Summaries Of Television Programs." The Preview
Patents are in the same patent family and share the same specification. FAC ¶
69. Unless otherwise noted, citations to the specification of the '399 patent
relate to all three Preview Patents.

Claim 1 of the '399 patent, the only asserted independent claim of the '399 patent, recites:

> 1. A computer-implemented method of providing summaries of programming to a recipient, the method comprising, at a network node:
>
> dividing a received program into program segments;
>
> summarizing and storing each program segment into a corresponding summary segment, wherein each summary segment includes audio, full-motion video, and at least one still picture;
>
> generating metadata files for delimiting a beginning and an end of summary segments and program segments; and
>
> upon a request from a user from a client device, supplying the summary segments in lieu of program segments, the summary segments being streamed in a first channel to the client device and the program segments being streamed in a second channel to the client device.

The asserted dependent claims of the '399 patent recite:

> 2. The computer-implemented method of claim 1, further comprising generating indexing information for facilitating links between the programming segments and the summary segments.
>
> 3. The computer-implemented method of claim 1, wherein the program is received via a broadband wired access link.
>
> 11. The computer-implemented method of claim 1, wherein storing the summary segments uses a storage medium located at a user location.
>
> 15. The computer-implemented method of claim 1, further comprising interrupting delivery of a program in response to an interrupt command delivered over an interrupt channel I.

Claim 1 of the '049 patent, the only asserted independent claim of the '049 patent, recites:

1. A method of generating programming summaries, the method comprising:

summarizing each program segment of a plurality of program segments of a program to yield a corresponding summary segment and storing the corresponding summary segment, wherein the corresponding summary segment comprises audio, video, and at least one image;

generating indexing information for facilitating links between each of the plurality of program segments and the corresponding summary segment; and

in response to a user request for a requested program segment comprising a subset of the program and based on the indexing information, streaming a requested summary segment for the requested program segment in a first channel to a client device of the user and streaming the requested program segment in a second channel to the client device.

The asserted dependent claims of the '049 patent recite:

3. The method of claim 1, further comprising accessing the corresponding summary segment by setting timing marks in the program to define summary boundaries.

4. The method of claim 1, further comprising accessing by linking via a hyperlink.

10. The method of claim 1, further comprising accessing the corresponding summary segment by setting position marks in the program to define summaries.

11. The method of claim 1, wherein the corresponding summary segment is stored on a storage medium at a location local to the user.

13. The method of claim 1, further comprising interrupting delivery of a program in response to an interrupt command delivered over an interrupt channel I.

16. The method of claim 1, further comprising
providing programming control, via a program channel
P, including a screen display responsive to an
interactive control of the user.

Claim 1 of the '328 patent, the only asserted independent

claim of the '328 patent, recites:

1. A method, comprising:

transmitting to a client device, by a computer-based
device, information that facilitates a display of a
link, wherein the link is selectable by a user to
navigate between a summary segment of a first program
and the first program, wherein the summary segment
includes a summary of a particular portion of the
first program, and wherein the summary segment
comprises at least one of the following: a video,
an audio, or an image;

in response to detecting a selection of the link by
the user, the computer-based device transmitting to
the client device at least a portion of the first
program;

subsequent to transmitting at least the portion of the
first program to the client device, the computer-based
device selecting, based on a user profile that
includes the first program, a second program; and

the computer-based device causing a display of at
least a portion of the second program on the client
device.

The asserted dependent claims of the '328 patent recite:

2. The method of claim 1, wherein the user profile
includes demographic information associated with the
user.

3. The method of claim 1, further comprising the
computer-based device implementing at least one timing
mark in the first program, wherein the at least one
timing mark is indicative of a boundary of a
particular summary segment.

6. The method of claim 1, wherein a boundary of the summary segment is identifiable based on at least one position marks included in the first program.

7. The method of claim 1, wherein the summary segment is stored on a storage device that is included in a communication network associated with the computer-based device.

11. The method of claim 1, further comprising the computer-based device interrupting a transmission of the first program in response to the computer-based device receiving interruption information from the user indicating that an interrupt command has been delivered over an interrupt channel.

Count VI asserts claims 1 and 4 of the '980 patent. The '980 patent relates to manipulating "low-level" data such as weather or time information and displaying it in a user-friendly way. See '980 patent, abstract; id., col. 1, lines 23-24 ("The present invention relates to providing, in real-time, low-level everyday data in an efficient way."). The specification of the '980 patent teaches that prior art systems for obtaining low-level data such as weather forecasts entail "a period of waiting and memorizing the number of the page, the webpage or the simple fact that the web page is in a list in a browser." Id., col. 1, lines 34-36. The specification states that, "while some of [the claimed invention's] components are in the state of the art, no other system provides the level of ease in accessing common information that can be achieved in accordance with exemplary embodiments of the present invention." Id., col. 1, lines 45-48.

The asserted claims of the '980 patent recite:

1. An information system based on time, space and relevance, said system comprising: a client that displays information in a user-friendly manner; a proxy that handles the collection and parsing of data; a server that gathers usage data from the client; a data mining cluster that allows for user profiling and time, space and relevance analysis; a set of information channels, which are periodically updated, and upon which automatic suggestions are given based on a user profile.

4. The system according to claim 1, wherein the data handled by the proxy is in extensible markup language (XML) format.

## II.

The defendants have moved to dismiss counts III—VI of the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss, the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[2] The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The court should not dismiss the plaintiff's claim if the complaint includes "enough facts to state a claim to relief that is plausible on its face." Bell

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009). While the court should construe
the factual allegations in the light most favorable to the
plaintiff, "the tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to
legal conclusions." Id. In deciding a motion to dismiss, the
court may consider the complaint, the patent, the intrinsic
record, and materials subject to judicial notice. See CardioNet,
LLC v. InfoBionic, Inc, 955 F.3d 1358, 1373–74 (Fed. Cir. 2020),
cert. denied, 141 S. Ct. 1266 (2021); Aatrix Software, Inc. v.
Green Shades Software, Inc., 882 F.3d 1121, 1128 (Fed. Cir.
2018) ("Aatrix I"); cf. Chambers v. Time Warner, Inc., 282 F.3d
147, 153 (2d Cir. 2002).

### III.

The defendants argue that the claims asserted in counts
III–VI of the FAC claim ineligible subject matter under 35
U.S.C. § 101.

Section 101 of the Patent Act, which defines the subject
matter eligible for patent protection, provides: "Whoever
invents or discovers any new and useful process, machine,
manufacture, or composition of matter, or any new and useful

improvement thereof, may obtain a patent therefor, subject to
the conditions and requirements of this title." 35 U.S.C. § 101.
The Supreme Court has held that "this provision contains an
important implicit exception: Laws of nature, natural phenomena,
and abstract ideas are not patentable." Alice Corp. Pty. Ltd. v.
CLS Bank Int'l, 573 U.S. 208, 216 (2014) (quoting Ass'n for
Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589
(2013)).

   Patent eligibility under § 101 is "ultimately an issue of
law" that "may contain underlying issues of fact." Berkheimer v.
HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018). However, the
Federal Circuit Court of Appeals has made clear that "not every
§ 101 determination contains genuine disputes over the
underlying facts material to the § 101 inquiry." Id. at 1368.
Accordingly, patent eligibility under § 101 may be resolved at
the motion to dismiss stage. See id.; Aatrix Software, Inc. v.
Green Shades Software, Inc., 890 F.3d 1354, 1358 (Fed. Cir.
2018).

   Patent eligibility is determined under the two-step
framework set out by the Supreme Court in Alice. At the first
step, the court asks whether the claims at issue are directed to
a patent-ineligible concept. If so, the court proceeds to step
two and asks whether the claims provide an "inventive concept"—
that is, "an element or combination of elements that is

9

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Alice, 573 U.S. at 217-18.

### A.

In determining whether the claims are directed to a patent-ineligible concept, the court "look[s] at the focus of the claims, their character as a whole." Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016). "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." Uniloc USA, Inc. v. LG Elecs. USA, Inc., 957 F.3d 1303, 1306 (Fed. Cir. 2020); see also Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).

### 1.

The defendants are correct that the asserted claims of the Preview Patents are directed to providing preview summaries of video or audio programming over a network. Each of the asserted claims of the Preview Patents recites a slightly different way of achieving this goal. As the shared specification states, "Recipients who receive network programming are enabled, according to principles of the invention, to receive television/audio programming from a distribution network and

view selected summaries of such programming as part of a network-based service." '399 patent, col. 1, lines 52-56. The asserted independent claims of the '399 and '049 patents recite the common steps of: providing multiple program segments, summarizing and storing program segments in a corresponding summary segment (including audio, video, and images), and streaming to a client device the summary segment in a first channel and the program segment in a second channel. <u>See</u> '399 patent, col. 11, lines 14-28; '049 patent, col. 11, lines 23-39. Claim 1 of the '399 patent recites the additional step of generating metadata files noting the beginning and end of segments. '399 patent, col. 11, lines 22-23. Claim 1 of the '049 patent calls for generating indexing information to facilitate links between summary segments and the corresponding program segment. '049 patent, col. 11, lines 30-32. Claim 1 of the '328 patent is also directed to providing summaries of programming, but recites the additional features of: link-based navigation between summary segments and the related program, and selecting and displaying additional programming to a client device "based on a user profile that includes the first program." '328 patent, col. 11, lines 19-36. Accordingly, while each of the asserted independent claims of the Preview Patents includes one or more

separate features, the shared focus of these three claims is providing preview summaries of video or audio programming.[3]

Providing preview summaries of video or audio programming over a network is an abstract idea. The Federal Circuit Court of Appeals has held that "information as such is an intangible and that collecting, analyzing, and displaying that information, without more, is an abstract idea." Interval Licensing LLC v. AOL, Inc., 896 F.3d 1335, 1344 (Fed. Cir. 2018). Courts have also recognized that providing previews of documents or merchandise is an abstract idea. See TS Patent LLC v. Yahoo! Inc., 279 F. Supp. 3d 968, 994-95 (N.D. Cal. 2017), aff'd, 731 F. App'x 978 (Fed. Cir. 2018); Am. Needle, Inc. v. Zazzle Inc., No. 15-cv-3971, 2016 WL 232440, at *3 (N.D. Ill. Jan. 19, 2016), aff'd, 670 F. App'x 717 (Fed. Cir. 2016). That the asserted claims of the Preview Patents are directed to video and audio content does not make them any less abstract. While the asserted claims recite a "computer-implemented" method of providing program summaries, video and audio technology existed long before the computer, and the idea of providing preview summaries

---

[3] The asserted dependent claims of the Preview Patents add additional features or steps but do not have a different focus. See ECF No. 39, at 8 (listing additions of the asserted dependent claims of the Preview Patents). Because the asserted dependent claims add only discrete features or steps that do not change the character of the claims as a whole, the asserted dependent claims are substantially similar to the independent claims. Accordingly, the asserted independent claims of the Preview Patents are representative of the asserted dependent claims for purposes of § 101. See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

of video and audio content is well-known, as demonstrated by movie trailers, television advertisements, and previews of music on the radio. Accordingly, providing preview summaries of video or audio content is an abstract idea that exists independent of computer technology.

Performing this task on a network does not make the asserted claims of the Preview Patents patent-eligible at step one. "Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility. Nor is limiting the use of an abstract idea to a particular technological environment. Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result." Alice, 573 U.S. at 223. The plaintiff argues that the asserted claims of the Preview Patents "present technical solutions to the technical problem of creating and transmitting on-demand streaming video summaries and corresponding programs to client devices." ECF No. 40, at 14, 17, 20. But "limit[ing] the invention to a technological environment for which to apply the underlying abstract concept. . . . do[es] not make an abstract concept any less abstract under step one." Intellectual Ventures I LLC v. Cap. One Fin. Corp., 850 F.3d 1332, 1340 (Fed. Cir. 2017). The asserted claims of the Preview Patents seek to improve the creation and transmission of preview summaries through the use of computer

technology. But because the asserted claims do not recite any specific technological improvement or improve computer functionality, this amounts to using the computer as a tool to perform what is itself an abstract idea. See Berkheimer, 881 F.3d at 1367; Enfish, 822 F.3d at 1336.

The asserted claims also do not present technical solutions because they do not describe how program segments are created or stored, how summary segments are streamed on a separate channel from program segments, how metadata files are generated (for the '399 patent), how indexing information is generated (for the '049 patent), how links are generated and displayed to facilitate navigation between a summary and program segments (for the '328 patent), or how additional programing is selected and displayed based on a user profile (also for the '328 patent). "[A] claimed invention must embody a concrete solution to a problem having the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." Interval Licensing, 896 F.3d at 1343; see also cxLoyalty, Inc. v. Maritz Holdings Inc., 986 F.3d 1367, 1378 (Fed. Cir. 2021) ("[T]he claims provide no useful guidance as to how this purported function is achieved and thus cannot be directed to a technological solution."). The asserted claims of the Preview Patents use highly functional, result-oriented language to describe their objectives, without explaining how

those objectives are accomplished. The claims are therefore not directed to any technical solution or technological improvement.[4]

**2.**

The defendants are also correct that the asserted claims of the '980 patent are directed to manipulating data and displaying it to a user. See, e.g., '980 patent, col. 1, lines 23-24 ("The present invention relates to providing, in real-time, low-level everyday data in an efficient way."). The specification of the '980 patent teaches that the claimed invention offers a "level of ease" in accessing information such as weather and time that is superior to prior art systems. See id., col. 1, lines 46-48. Independent claim 1 of the '980 patent describes the features of the claimed invention that manipulate and display the data:

> a client that displays information in a user-friendly
> manner; a proxy that handles the collection and
> parsing of data; a server that gathers usage data from
> the client; a data mining cluster that allows for user

---

[4] Further supporting that the asserted claims of the Preview Patents are directed to an abstract idea is the fact that, during prosecution of the '399 patent, the United States Patent and Trademark Office ("PTO") rejected the asserted claims of the '399 patent under § 101 because the claimed steps "yield no physical transformation that would lead to a useful, concrete and tangible result with respect to a practical/real world application." See Allen Decl., Ex. F, ECF No. 39-7, at 2. The applicants overcame this rejection simply by adding the phrase "computer-implemented" to the asserted claims. See Allen Decl., Ex. G, ECF No. 39-8, at 2-4, 10. The plaintiff argues that this portion of the prosecution history is irrelevant because the PTO, in initially rejecting the asserted claims, relied on a § 101 standard different from the current standard as articulated by the Supreme Court in Alice. See ECF No. 40, at 24-25. While not dispositive, it is relevant that the applicants, in order to overcome a rejection by the PTO based on § 101, made a single addition to the claim language that amounts to precisely the sort of generic computer implementation that fails to establish patent eligibility under Alice. See 573 U.S. at 223 ("[I]f a patent's recitation of a computer amounts to a mere instruction to 'implement' an abstract idea 'on a computer,' that addition cannot impart patent eligibility.").

> profiling and time, space and relevance analysis; a
> set of information channels, which are periodically
> updated, and upon which automatic suggestions are
> given based on a user profile.

Id., col. 6, lines 11–18. Claim 4 simply specifies that the data

collected is in XML format. Id., col. 6, lines 23–25.

Manipulating data and displaying it to a user is an

abstract idea. See Univ. of Fla. Rsch. Found., Inc. v. Gen.

Elec. Co., 916 F.3d 1363, 1367–68 (Fed. Cir. 2019); Interval

Licensing, 896 F.3d at 1344; Intellectual Ventures I, 850 F.3d

at 1340. Of course, there were pre-computer methods for people

to obtain "low-level" data, such as clocks and thermometers. The

asserted claims of the '980 patent simply seek to collect this

information and display it on "a touch screen placed inside the

home to provide quick and easy access." '980 patent, col. 2,

lines 35–39. "This is a quintessential 'do it on a computer'

patent." Univ. of Fla. Rsch. Found., 916 F.3d at 1367.

The plaintiff argues that the asserted claims of the '980

patent "are directed to technical solutions to the technical

problems of (i) reducing the wait time between requesting

common, everyday information and displaying such information to

a user and (ii) intelligently generating suggested content for

the user from the potentially extensive information based on a

user profile." ECF No. 40, at 27. But improving a user's

experience (providing "quick and easy access" to low-level data)

does not make the asserted claims non-abstract at step one because the patent does not articulate any specific technological improvement. See Simio, LLC v. FlexSim Software Prods., Inc., 983 F.3d 1353, 1361 (Fed. Cir. 2020). "Intelligently generating suggested content for the user" does not constitute a technological improvement because, as the specification of the '980 patent makes clear, this process entails nothing more than the collection, processing, and manipulation of data on a general-purpose computer. See '980 patent, col. 4, lines 9-29. Therefore, the asserted claims of the '980 patent are not directed to a technical solution.

Because all the asserted claims are directed to an abstract idea, it is necessary to proceed to step two.

## B.

At step two, the court searches "for an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Alice, 573 U.S. at 217-18. "The second step of the Alice test is satisfied when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." Berkheimer, 881 F.3d at 1367. At the motion to dismiss stage, "plausible and specific factual allegations that aspects of the claims are

inventive are sufficient." <u>Cellspin Soft, Inc. v. Fitbit, Inc.</u>,
927 F.3d 1306, 1317 (Fed. Cir. 2019); <u>see also</u> <u>Aatrix I</u>, 882
F.3d at 1125, 1128.

1.

The asserted claims of the Preview Patents do not recite an
inventive concept. The plaintiff fails to point to anything in
the claim language or the shared specification that would
support a finding that the claims recite more than the
performance of well-understood and conventional activities
previously known to the industry.

The asserted claims recite generic functions that can be
performed by any general-purpose computer (namely, manipulating
video data, generating files, and delivering video data files to
end users). Indeed, the shared specification of the Preview
Patents explicitly states that the functions recited in the
asserted claims were well-understood in the industry as of the
patents' priority date. <u>See, e.g.</u>, '399 patent, col. 2, lines
57-58 ("The MPEG-2 standards enable user data, in the form of
metadata, to be included in a video sequence."); <u>id.</u>, col. 4,
line 65-col. 5, line 1 ("Summary metadata may be expressed in
XML (eXtensible Markup Language) or a suitable equivalent. XML
is well known and need not be discussed in detail."); <u>id.</u>, col.
1, lines 28-37 (existing systems "provide features that surpass
recording by monitoring listener preferences and by suggesting

programming appropriate to these preferences"). Because the asserted claims of the Preview Patents use only conventional computer hardware and software to carry out the abstract idea of providing preview summaries of video and audio programming over a network, the claims do not recite an inventive concept.

The plaintiff argues that the FAC contains "plausible and specific factual allegations that aspects of the claims are inventive," ECF No. 40, at 25–26, but the FAC simply recites the same generic steps as the asserted claims. See FAC ¶¶ 45–48 (describing the steps recited by the asserted claims of the '399 patent); id. ¶¶ 61–64, 77–79 (same for the asserted claims of the '049 and '328 patents). And while the FAC also contains conclusory allegations that the asserted claims of the Preview Patents contain an inventive concept, claim a novel sequence of steps, and are directed to technical solutions, such conclusory allegations are insufficient to overcome a motion to dismiss. See id. ¶ 49 ("These steps set forth in the asserted claims [of the '399 patent], including their claimed sequence, constitute patent-eligible subject matter, are not directed to an abstract idea, . . . and contain one or more technical, inventive concepts for accomplishing the goal of efficiently creating and providing summaries of streaming video programs to users to facilitate efficient user selection of desired programs."); id. ¶¶ 65, 80 (same for the asserted claims of the '049 and '328

patents); id. ¶ 50 ("The claimed sequence of steps set forth in the asserted claims of the '399 patent was not well-understood, routine, or conventional at the time of the invention."); id. ¶¶ 66, 81 (same for the asserted claims of the '049 and '328 patents). The plaintiff fails to identify any specific element of the asserted claims of the Preview Patents that is novel, or any specific way in which the claimed sequence of steps constitutes a technological improvement over prior art systems. Accordingly, the FAC in this case is not like the complaints that passed muster in Cellspin and Aatrix I. Cf. Cellspin, 927 F.3d at 1316 ("Cellspin's allegations identify several ways in which its application of capturing, transferring, and publishing data was unconventional."); Aatrix I, 882 F.3d at 1127 (noting several specific allegations in the complaint that detailed how the claimed invention improved upon prior art systems and improved computer functionality). This case is also unlike BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016), where "the patent describe[d] how its particular arrangement of elements [was] a technical improvement over prior art ways of filtering [] content." The FAC in this case contains only conclusory allegations of inventiveness, not the sort of "plausible and specific factual allegations" that are required to satisfy Alice step two, Cellspin, 927 F.3d at 1317.

**2.**

For similar reasons, the asserted claims of the '980 patent also lack an inventive concept. The specification of the '980 patent states that, "while some of [the claimed invention's] components are in the state of the art, no other system provides the level of ease in accessing common information that can be achieved in accordance with exemplary embodiments of the present invention." '980 patent, col. 1, lines 45-48. But nowhere does the specification, the asserted claims, or the FAC explain how the particular arrangement of claimed elements constitutes a technological improvement over prior art systems for accessing low-level data. Indeed, the specification of the '980 patent states that the claimed invention "can be implemented in general-use digital computers that execute the programs using a computer readable recording medium and other types of transmission media." Id., col. 5, lines 47-50. This is similar to the claims that were found patent-ineligible in Univ. of Fla. Rsch. Found., 916 F.3d at 1369, which "recite[d] the abstract idea of collecting, analyzing, manipulating, and displaying data, and . . . propose[d] using a general-purpose computer to carry it out."

The FAC recites the same generic steps as claim 1 of the '980 patent and contains only conclusory allegations that the asserted claims contain an inventive concept. See FAC ¶¶ 89, 95-

96.[5] And while the FAC states that the asserted claims of the '980 patent are directed to the technical problems of reducing wait time and intelligently generating suggested content based on a user profile, id. ¶ 89, neither the patent nor the FAC explains how these improvements to user experience are a product of any particular technological innovation.[6]

Accordingly, the asserted claims of the '980 patent do not recite an inventive concept, and all the claims asserted in counts III, IV, V, and VI of the FAC claim ineligible subject matter under § 101.[7]

---

[5] Claim 4 of the '980 patent, which recites "The system according to claim 1, wherein the data handled by the proxy is in [XML] format," '980 patent, col. 6, lines 23-25, does not contain an inventive concept because the use of a generic data structure does not transform the abstract idea of manipulating and displaying data into a patentable invention at step two. See Intellectual Ventures I, 850 F.3d at 1341-42; cf. cxLoyalty, 986 F.3d at 1379 (asserted claim that recited converting information into a more user-friendly format ineligible under § 101 in part because the claimed invention did not "improve[] the use of computers as a tool by reciting a new way for computers to conduct format conversion").

[6] To the extent that these "technical problems" are overcome simply by using generic computer functions to carry out the abstract idea of manipulating data and displaying it to a user, such improvements do not evince an inventive concept. See Intellectual Ventures I LLC v. Cap. One Bank (USA), 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("Nor, in addressing the second step of Alice, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept.").

[7] Rather than seeking to amend the FAC, the plaintiff asks the Court to ignore Alice and the controlling case law on § 101 because "the abstract idea exception is not supported by the text of section 101." ECF No. 40, at 30 (capitalizations omitted). But the Supreme Court's decision in Alice is binding and cannot be ignored. If the plaintiff seeks leave to amend the FAC, then the plaintiff should explain, in any motion to amend, how the proposed amendment would resolve the issues raised in this Memorandum Opinion and Order. The plaintiff should bear in mind that allegations about inventiveness that are "wholly divorced from the claims or the specification" would not cure the deficiencies in counts III-VI of the FAC because such allegations are not sufficient to overcome a motion to dismiss. Cellspin, 927 F.3d at 1317.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss counts III, IV, V, and VI of the FAC is **granted.** The claims asserted in counts III—VI claim ineligible subject matter under § 101.

The Clerk is directed to close ECF Nos. 28, 38, and 42. The defendants should answer the remaining claims of the FAC by April 15, 2022. The parties should submit a Rule 26(f) report by April 29, 2022.

**SO ORDERED.**

Dated:    **New York, New York**
          **March 21, 2022**

                                  **John G. Koeltl**
                         **United States District Judge**